

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CORDELIA PEDRO,                                    CV. 10-6047-MA

             Plaintiff,                        OPINION AND ORDER

   v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security

         Defendant.

BRENDA S. MOSELEY
320 Central Avenue Suite 422
Coos Bay, OR 97420

   Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

DAVID MORADO
Regional Chief Counsel
FRANCO L. BECIA
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104-7075

   Attorneys for Defendant

1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Cordelia Pedro brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability insurance benefits (DIB) under Title II and supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 401-403, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). For the reasons that follow, I REVERSE the final decision of the Commissioner, and REMAND this case for an immediate award of benefits.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI benefits on August 29, 2006, alleging disability beginning on July 2, 1974, her date of birth. Plaintiff's application was denied initially and on reconsideration. Plaintiff requested a hearing. Plaintiff is represented by counsel. Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ) on May 18, 2008. At the beginning of the hearing, plaintiff amended her alleged onset of disability date to July 16, 2006. A vocational expert, Dennis J. Elliot, also testified at the hearing. The ALJ issued an unfavorable decision on June 20, 2008. The Appeals Council denied plaintiff's request for review on December 17, 2009. Accordingly, the ALJ's decision became the final decision of the agency.

## FACTUAL BACKGROUND

Plaintiff was 32 years old at the time of the hearing. Plaintiff was placed in special education classes at an early age, and completed high school. Plaintiff attended Southwestern Oregon Community College and took basic adult education courses. Plaintiff has worked as a teacher's aide, a courtesy clerk/grocery bagger, a deli clerk, a fast food worker, and as a laundress in a hospital. At the time of the hearing, plaintiff was working part-time at a grocery store. Plaintiff alleges disability due to asthma, attention deficit disorder, dyslexia, a developmental disorder, back pain, and severe eczema.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at step five to show that a significant number of jobs exist in the national economy that the claimant can perform. Yuckert, 482 U.S. at 141-42.

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2010. A claimant seeking DIB benefits under Title II must establish

3 — OPINION AND ORDER

disability on or prior to the last date insured.    42 U.S.C. §
416(I)(3); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ presumed for purposes of the decision
that plaintiff has not engaged in substantial gainful activity
since July 19, 2006, her amended alleged onset of disability.  See
20 C.F.R. §§ 404.1520(b), 404.1571 et seq., 416.920(b), 416.971 et
seq.

At step two, the ALJ found that plaintiff had the following
severe impairments:  asthma and a cognitive disorder with extremely
low  intellectual  functioning.    See  20  C.F.R.  §§  404.1520(c),
416.920(c).

At step three, the ALJ found that plaintiff's impairments, or
combination of impairments did not meet or medically equal a listed
impairment.  See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526,
416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity
(RFC) to perform a full range of work at all exertional levels with
the following nonexertional limitations:  she is unable to follow
complex or detailed instructions; she is unable to perform multiple
tasks  simultaneously;  she  should  receive  job  instructions  by
demonstration, but can utilize lists to help remember things; she
is unable to tolerate temperatures above normal room temperature;
she is unable to tolerate excessive humidity; she needs to avoid
skin irritants such as chemicals or disinfectants; she needs to

4 - OPINION AND ORDER

avoid smoke and fumes in excessive amounts.   See 20 C.F.R. §§ 404.1527, 404.1529, 416.927, 416.929.

At step four, the ALJ found plaintiff capable of performing her past relevant work (PRW) as a teacher's aide II, courtesy clerk/bagger, and delicatessen cutter/slicer.   See 20 C.F.R. §§ 404.1565, 416.965.

The ALJ made alternative step five findings, and concluded that considering plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that plaintiff can perform.   See 20 C.F.R. §§ 404.1560(c), 404.1566, 416.960(c), 416.966.   Accordingly, the ALJ concluded that Plaintiff is not disabled under the meaning of the Act.

### ISSUES ON REVIEW

Plaintiff contends that the ALJ made the following errors: (1) improperly found that plaintiff's impairments did not meet or equal Listing 12.05C; and (2) the Commissioner failed to meet its burden at step five.

### STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.   42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable

5 - OPINION AND ORDER

mind might accept as adequate to support a conclusion." <u>Andrews</u>,

53 F.3d at 1039; <u>Valentine v. Comm'r Soc. Security Admin.</u>, 574 F.3d

685, 690 (9th Cir. 2009).  The court must weigh all the evidence,

whether it supports or detracts from the Commissioner's decision.

<u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The

Commissioner's decision must be upheld, even if the evidence is

susceptible to more than one rational interpretation.  <u>Batson v.

Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004);

<u>Andrews</u>, 53 F.3d at 1039-40.  A decision to deny benefits may be

set aside only if the ALJ's findings are based on legal error or

are not supported by substantial evidence in the record.  <u>Benton ex

rel. Benton v. Barnhart</u>, 331 F.3d 1030, 1035 (9th Cir. 2003).

**I.    The ALJ Erred in Finding That Plaintiff Did Not Meet Listing
        12.05C.**

The Social Security Regulations' "Listing of Impairments"

generally describes impairments that are so severe as to be

considered presumptively disabling, without further consideration

of a claimant's residual functioning capacity, past relevant work,

or other jobs.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A diagnosis

of a listed impairment is not sufficient; the claimant must also

satisfy the findings shown in the listing of that impairment.

<u>Young v. Sullivan</u>, 911 F.2d 180, 184 (9th Cir. 1990).  A claimant

has the burden to establish that he or she meets or equals the

criteria for a listed impairment based on medical evidence.  <u>Burch</u>,

400 F.3d at 683; <u>Tackett</u>, 180 F.3d at 1100.

The Commissioner argues that Listing 12.05C requires plaintiff

to "meet the diagnostic description of mental retardation," and

that therefore, a diagnosis of mental retardation is a prerequisite

to meet Listing 12.05C.  According to the Commissioner, because

plaintiff does not have a diagnosis of mental retardation, she

cannot meet the listing.  I disagree.

Although the Ninth Circuit has not yet ruled on this issue,

the Eighth Circuit and several other district courts within the

Ninth Circuit, including the District Court of Oregon, have

determined that a formal diagnosis of mental retardation is not

required to meet Listing 12.05C.  <u>Maresh v. Barnhart</u>, 438 F.3d 897,

899 (8th Cir. 2006) (finding that formal diagnosis of mental

retardation is not required); <u>Christner v. Astrue</u>, 498 F.3d 790,

793 (8th Cir. 2007)(same); <u>Stokes v. Astrue</u>, No. 09-1264-PK, 2011

WL 285224, *8-9 (D. Or. Jan. 11, 2011), <u>adopted in full</u>, 2011 WL

284433 (D. Or. Jan. 24, 2011)(same); <u>Frazier v. Astrue</u>, No. CV-09-

3063-CI, 2010 WL 3910331, *4 (E.D. Wash. Oct. 4, 2010)(same); <u>Gomez</u>

<u>v. Astrue</u>, 695 F.Supp.2d 1049, 1057-58 (C.D. Cal. 2010)(same);

<u>Applestein-Chakiris v. Astrue</u>, No. 09CV00009BTM, 2009 WL 2406358,

*8 (S.C. Cal. Aug. 5, 2009)(same).

These courts have concluded that the regulation itself does

not require a diagnosis; instead, the text requires a claimant to

satisfy the diagnostic description in the introductory paragraph *and* one of the criteria set forth in parts A through D.  See, e.g., Maresh, 438 F.3d at 899; Miller v. Astrue, No. CV-09-337-HA, 2010 WL 3824079,* 3 (D. Or. Sept. 23, 2010).  This conclusion is supported by the introduction to the mental health listings which provides:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).  If your impairment satisfies the diagnostic description *in the introductory paragraph* and any one of the four sets of criteria, we will find that your impairment meets the listing.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A (emphasis added).

The decision in Foster v. Halter, 279 F.3d 348, 354 (6th Cir. 2001), upon which the Commissioner relies, is not to the contrary. In Foster, the court noted that "[a] claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment."  Id.  Continuing, the Foster court reasoned that based on amendments to the regulations in 2000, the regulations now provide that "a claimant will meet the listing for mental retardation only '[i]f [the claimant's] impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria.'"  Id. (emphasis in original)(quoting revised regulation § 12.00A.  Thus, contrary to the Commissioner's

assertion, Foster does not require a mental retardation diagnosis to satisfy Listing 12.05C.

Therefore, I conclude that plaintiff is not required to have a diagnosis of mental retardation to satisfy Listing 12.05C. Maresh, 438 F.3d at 899; Stokes, 2011 WL 285224 at *9 ("the various labels that psychologists use to describe Stokes' intellectual capacity are not particularly relevant"). Under a plain reading of the regulation, and consistent with the case law above, plaintiff must satisfy the introductory paragraph stated in Listing 12.05 and the "C" criteria.

Specifically, Listing 12.05C provides:

Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

. . . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C (hereinafter Listing 12.05C).

In sum, plaintiff is required to demonstrate the following: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning with an onset before age 22; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3)

9 - OPINION AND ORDER

a physical or other mental impairment imposing an additional and significant work-related limitation of function.    I must now examine whether the ALJ's conclusion that plaintiff did not satisfy Listing 12.05C is supported by substantial evidence. I conclude that it is not.

### A.    Onset Prior to Age 22.

To satisfy the introductory paragraph of Listing 12.05C, what I have called the first prong, plaintiff must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset before age 22." Listing 12.05C; Maresh, 438 F.3d at 899-900; Stokes, 2011 WL 285224 at *9; Miller, 2010 WL 3824070 at *3.

In this case, the ALJ presumed that plaintiff met the required low level of intellectual functioning prior to age 22.    However, the ALJ concluded that plaintiff's effective adaptive functioning[1] precluded a diagnosis of mental retardation, and therefore she could not meet the listing.    Specifically, the ALJ concluded that:

---

[1]The *Diagnostic & Statistical Manual of Mental Disorders* describes "adaptive functioning" as "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, socioeconomic background, and community setting. ... Problems in adaption are more likely to improve with remedial efforts than is the cognitive IQ, which tends to remain a more stable attribute." *American Psychiatric Ass'n Diagnostic & Statistical Manual of Mental Disorders* 42 (4th ed. 2000, text revision)(*DSM-IV-TR*).

the required "deficits in adaptive functioning" are contraindicated by the claimant's many years of substantial gainful activity. Her effective adaptive skills preclude the diagnosis of mental retardation indicating that evaluation is appropriate under listing 12.02, as done by the state agency psychologists, rather than 12.05. (Tr. 16.)

As discussed above, to the extent that the ALJ required a formal diagnosis of mental retardation to meet Listing 12.05C, the ALJ has erred. The ALJ erred by requiring plaintiff to demonstrate deficits in adaptive skills which would support a mental retardation diagnosis. As discussed above, under the listing, plaintiff is required only to demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning" before age 22 to satisfy the introductory paragraph, not a mental retardation diagnosis.

A showing of early onset for purposes of Listing 12.05C does not require clinical or IQ tests. Lewis v. Astrue, No. C06-6608SI, 2008 WL 191415, *7 (N.D. Cal. Jan. 22, 2008). A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, such as "attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." Campbell v. Astrue, No. 1:09-CV-00465GSA, 2011 WL 444783, *17 (E.D.Cal. Feb. 8, 2011); Gomez, 695 F. Supp. 2d at 1058-59.

The record in this case provides ample circumstantial evidence demonstrating onset of plaintiff's intellectual impairment prior to

age 22.   At the hearing, plaintiff testified that she was in special education classes from a very early age, but managed to graduate from high school. (Tr. 37.) Plaintiff described that she struggles with reading and writing, and has no memory. (Tr. 37.) Plaintiff stated that she can read the newspaper, but has difficulty completing paperwork and requires assistance from friends. (Tr. 46-47.)

Plaintiff also has a history of low skilled work.  At the hearing, plaintiff testified that she worked at Bay Area Hospital in the laundry department, but had difficulty staying on task, and worked very slowly. (Tr. 48). Plaintiff also testified that the chemicals in the laundry department aggravated her asthma and eczema, and caused her eyes to swell. (Tr. 48.)

Plaintiff testified that after leaving Bay Area Hospital, she began working at Safeway in the deli department. (Tr. 42.)  In that job, plaintiff was required to make sandwiches, and she testified that she could not remember what bread and cheeses the customers requested in their sandwiches. (Tr. 43.)   Plaintiff further testified that because she could not keep up, Safeway transferred her to a position as a courtesy clerk, where she bags groceries, helps customers, brings in carts, and cleans the bathrooms.[2]  (Tr. 30, 43-44.)

---

[2]Additionally, there is no evidence in the record to suggest that plaintiff's mental impairment began sometime after she reached age 22.  Plaintiff denied any drug use, nor is there any

Plaintiff's testimony is consistent with the information she provided to the examining psychologists.  On August 3, 2002, Keith W. Murdock, Ed.S., NCSP, School Psychologist, conducted a psychoeducational evaluation.  Mr. Murdock performed a variety of tests, including the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III), commonly known as the IQ test, to assess plaintiff with a Verbal IQ of 70, a Performance IQ of 77, and a Full Scale IQ of 71.  Mr. Murdock stated his belief that the result were "a valid and reliable assessment" of plaintiff's skills.  (Tr. 189.)

In his evaluation, Mr. Murdock noted that plaintiff's reading level is at the fourth grade level, and her written language skills are at the second grade level.  (Tr. 193.)  Mr. Murdock also reported that plaintiff has "extreme difficulty in short term auditory recall" which is typical of persons with Attention Deficit Disorder.  Mr. Murdock rated plaintiff's intellect at a "mentally deficient to borderline" range.

On August 22, 2002, James W. Wahl, Ph.D., Licensed Clinical Psychologist, conducted another comprehensive evaluation of plaintiff.  Dr. Wahl conducted a battery of tests, including the WAIS-III, and an MMPI-2.  Dr. Wahl assessed a Verbal IQ of 68, a Performance IQ of 73, and a Full Scale IQ of 67, confirming the

medical evidence in the record to suggest a decrease in her intellectual capacity due to disease or accident.

results reached by Mr. Murdock. Dr. Wahl indicated that plaintiff reported that she was placed in special education in kindergarten, and that she struggled to graduate from high school. (Tr. 197-99.) Dr. Wahl noted that plaintiff's IQ scores placed her in the "Extremely Low" range of intellectual functioning, "despite excellent effort." Further, Dr. Wahl determined that her MMPI-2, which he read to her, "produced a valid profile." Dr. Wahl diagnosed plaintiff with a cognitive disorder, not otherwise specified, and assigned a global assessment of functioning (GAF) of 70.

Dr. Wahl described that plaintiff had very low scores on tasks with attention and concentration, and plaintiff "could not repeat 5 digits forwards or even 3 backwards," and that her scores were "indicative of marked deficiencies of attention and concentration." (Tr. 199.) Additionally, with respect to plaintiff's memory, Dr. Wahl explained:

> [Plaintiff's] Auditory Immediate Index of 68 is misleading because it actually *overestimates* her functional verbal memory as it reflects a combination of her low-average score on Verbal Paired Associates and her extremely low score on Logical Memory I, which is more predictive of a person's ability to remember verbal instructions, conversations, or commands in real life. Her performance on this task was very telling – she managed to remember just 13 of 75 story elements – and this alone shows that she would not be able to remember and carry out even short and simple instructions on the job without almost constant repetition and supervision (Id.)(emphasis in original).

In finding that plaintiff did not meet the listing due to her adaptive skills, the ALJ relied upon the state agency reviewing psychologists Bill Hennings, Ph.D, and Dorothy Anderson, Ph.D. After reviewing plaintiff's records, Dr. Hennings completed a Psychiatric Review Technique (PRT) and Mental Residual Functional Capacity Assessment on September 27, 2006. In completing the PRT, Dr. Hennings diagnosed borderline intellectual functioning under Listing 12.02, and concluded that plaintiff had no restrictions in her activities of daily living, no difficulties in maintaining social functioning, mild difficulties maintaining concentration, persistence and pace, and suffered no episodes of decompensation. (Tr. 242, 252.) Dr. Hennings noted that plaintiff can perform all of her activities of daily living, and has a good work history. (Tr. 254.)

Dr. Anderson reviewed plaintiff's records and observed that plaintiff had mental impairments that limit her functioning. Dr. Anderson noted plaintiff's work history and that plaintiff is raising her two children alone, and has "good adaptive functioning." (Tr. 272.) Dr. Anderson opined that plaintiff could perform simple tasks despite her mental impairments. (Id.)

However, in relying on the reviewing state agency psychologists, the ALJ failed to even mention the evaluation conducted by Dr. Wahl, let alone provide specific and legitimate

reasons for discounting Dr. Wahl's opinion.[3]  The ALJ has erred in
failing to discuss this probative evidence.  See Vincent v.
Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(ALJ need not
discuss all evidence, but must explain why significant probative
evidence has been rejected).  I similarly find that the ALJ failed
to provide specific an legitimate reasons for discounting the
opinion of Mr. Murdock in favor of the non-examining state agency
psychologists.

Additionally, the ALJ erred in ignoring probative testimony
from the vocational expert Dennis J. Elliot.  At the hearing, Mr.
Elliot testified that the degree of supervision plaintiff required
at Bay Area Hospital and her current position at Safeway was more
akin to a supervised workshop setting or "accommodated employment"
and not competitive employment.  (Tr. 59, 61.)  Mr. Elliot's
testimony was consistent with Dr. Wahl's findings with respect to
plaintiff's memory and required level of supervision.  As noted
above, Dr. Wahl indicated that plaintiff would need almost constant
repetition and supervision.  (Tr. 199.)  Mr. Elliot's testimony and
Dr. Wahl's findings were echoed in the written lay testimony
provided by Alice Hill, plaintiff's supervisor while she worked in

---

[3]If the ALJ believed that plaintiff's adaptive skills were
inconsistent with her IQ scores or a diagnosis of mild mental
retardation, he failed to meet his duty to assist in developing
the record by ordering a new mental status examination with
adaptive skills testing.  See Reed v. Massanari, 270 F.3d 838,
842-43 (9th Cir. 2001)(discussing ALJ's duty to develop the
record).

the laundry department at the Bay Area Hospital.  Ms. Hill provided
that plaintiff needed extra help, has no memory, and could only be
given one task at a time.  (Tr. 185.)  The ALJ's failure to discuss
the VE's testimony regarding plaintiff's required level of
supervision was error. (Tr. 61.)  Vincent, 739 F.2d at 1395; see
also Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (ALJ
erred by failing to discuss lay testimony that claimant needed
constant supervision, which VE stated was inconsistent with
competitive employment).

In this case, the ALJ suggests that because plaintiff has a
drivers' license, is able to live independently, handles her own
hygiene, and takes care of her children, she cannot be disabled.[4]
However, the record contains evidence demonstrating deficits in
adaptive functioning prior to age 22.  The listing does not require
more.  Moreover, courts have held that daily activities such as
reading, driving, and cleaning are not necessarily inconsistent
with mental retardation. Huber v. Astrue, No. CIV-10-8043, 2010 WL
4684021, *4 (D. Ariz. Nov. 12, 2010).  Indeed, a claimant can
satisfy Listing 12.05C without "having to demonstrate a disabling,
or even severe, level of mental functioning impairment." Gomez,

---

[4]Furthermore, the record is not as clear on this point as
the ALJ suggests.  Plaintiff indicated in her evaluation with Dr.
Wahl that she lived with her brother's mother-in-law and utilized
a payee to handle her finances.  (Tr. 200.)  Dr. Wahl also noted
his belief that plaintiff minimized her restrictions in
activities of daily living.  (Tr. 201.)  As discussed above, the
ALJ erred in failing to discuss Dr. Wahl's evaluation.

17 - OPINION AND ORDER

695 F.Supp.2d at 1057 (claimant met Listing 12.05C with mild functional impairments); Huber, 2010 WL 4684021, *4.

As one court has determined, "[c]laimant's ability to take care of herself and her children, though certainly physically and emotionally demanding, is no indication of the intellectual demand of those activities and is not inconsistent with being mentally retarded." Lewis, 2008 WL 191415 at *7; accord Maresh, 438 F.3d at 900 (onset before age 22 demonstrated where record showed claimant was in special education classes; dropped out of school; had difficulty in reading, writing, and math; and exhibited deficits in adaptive functioning at a young age).

Examining the record as a whole, I conclude that there is ample support to find that plaintiff demonstrated significantly subaverage intelligence with deficits in adaptive functioning prior to age 22. Thus, to the extent that the ALJ concluded that plaintiff did not satisfy the first prong of 12.05C, the decision is not supported by substantial evidence.

### B.    Valid IQ Scores.

The ALJ did not question the validity of plaintiff's IQ scores, and the Commissioner does not dispute that the plaintiff satisfies the second prong of the listing. As discussed above, Mr. Murdock assessed plaintiff with a Verbal IQ of 70, a Performance IQ of 77, and a Full Scale IQ of 71. Mr. Murdock stated his belief that the result were "a valid and reliable assessment" of

plaintiff's skills.  (Tr. 189.)  Dr. Wahl assessed a Verbal IQ of 68, a Performance IQ of 73, and a Full Scale IQ of 67, confirming the results reached by Mr. Murdock.  Dr. Wahl determined that plaintiff's MMPI-2 "produced a valid profile."

Because there is substantial evidence in the record to support the validity of plaintiff's IQ scores, the court concludes that plaintiff has satisfied the second prong of Listing 12.05C. Valentine, 504 F.3d at 1193; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

### C.   An Additional and Significant Work-Related Limitation of Function.

To satisfy the third prong of Listing 12.05C, a claimant must have "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Pt. 404, Subpt. P., App.1, § 12.05; Gomez, 695 F.Supp.2d at 1061; Stokes, 2011 WL 285224 at *10.

The Ninth Circuit has held that "an impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal."  Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987).  The Fanning court concluded that if a claimant has an additional physical or mental impairment which was itself severe, that impairment automatically satisfies the more than slight or minimal effect standard.  Id. at 633 n.3.

After  Fanning,  the  Commissioner  revised  the  relevant
regulations for the evaluation of mental disorders.  The regulation
for Listing 12.05C now provides that:

> we will assess the degree of functional limitation the
> additional  impairment(s)  imposes  to  determine  if  it
> significantly limits your physical or mental ability to
> do  basic  work  activities,  i.e.,  is  a  "severe"
> impairment(s),  as  defined  in  §§  404.1520(c)  and
> 416.920(c).  If the additional impairment(s) does not
> cause limitations that are "severe" as defined in §§
> 404.1520(c) and 416.920(c) we will not find that the
> additional  impairment  imposes  "an  additional  and
> significant work-related limitation of function[.]" 20
> C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00A.

Cases interpreting Fanning and the new regulations conclude
that if an ALJ finds an impairment to be "severe" at step two of
the disability analysis, "that impairment necessarily has more than
a slight or minimal effect on claimant's ability to perform basic
work activities." Stokes, 2011 WL 285224 at *10; accord Campbell,
2011 WL 444783 at *18 ("a finding of severe impairment at step two
is  a  *per se*  finding  of  'impairment  imposing  additional  and
significant work-related limitation of function'" to meet Listing
12.05C); Garrett v. Astrue, No. EDCV 07-549-MAN, 2008 WL 4350374,
*5-6 (C.D. Cal. Sept. 19, 2008)(collecting cases finding that a
step two determination of an additional impairment will satisfy
this prong of Listing 12.05C); see also Maresh, 438 F.3d at 900
(finding that personality disorder had more than slight or minimal
effect on ability to work, satisfying "severe" standard required to
meet Listing 12.05C).

20 - OPINION AND ORDER

In this case, at step two, the ALJ concluded that in addition to extremely low intellectual functioning, plaintiff also suffers from asthma and eczema.  This finding alone satisfies the final requirement of Listing 12.05C.  Despite this step two finding however, the ALJ concluded because plaintiff's asthma and eczema create only environmental restrictions, they are not considered severe, relying on Social Security Ruling 85-15, available at 1985 WL 56857 (SSR 85-15).  I disagree.

To begin, it is not entirely clear that SSR 85-15 applies at step three, given that SSR 85-15 typically applies in the context of assessing a claimant's residual functional capacity.  See 20 C.F.R. §§ 404.1520(d), 416.920(d)(claimant who meets a listing is presumptively disabled, without considering residual functional capacity or past relevant work); see Roberts v. Shalala, 66 F.3d 179, 183 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996)(finding that SSR 85-15 applies where solely non-exertional limitations are at issue).  Nevertheless, the portion of SSR 85-15 referring to environmental restrictions provides that ordinarily, nonexertional restrictions do not significantly affect the range of work existing for individuals who do not have exertional restrictions.  SSR 85-15.  "However, numerous environmental restrictions might lead to a different conclusion."  Id.

In this case, when determining plaintiff's RFC, the ALJ found that plaintiff had numerous environmental restrictions:  she is

unable to tolerate temperatures above normal room temperature, she cannot tolerate excessive humidity, she needs to avoid skin irritants, such as chemicals or disinfectants, and needs to avoid smoke or fumes in excessive amounts. (Tr. 17-18.) Additionally, reviewing physician Linda Jensen, M.D., advised that plaintiff avoid even moderate exposure to extreme heat or wetness, and avoid all exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 264.) As plaintiff's lengthy list of environmental restrictions demonstrates, these restrictions have more than a minimal or slight impact on plaintiff's ability to do work, satisfying the severe standard.

I conclude that the ALJ committed legal error when he concluded that plaintiff did not satisfy the final prong of Listing 12.05C. Under the regulations and Fanning, plaintiff's asthma and eczema are an "additional and significant work related limitation of function" satisfying the final prong of Listing 12.05C.

**II. Remedy.**

For the record, the court further concludes in the alternative that reversal and remand of this action is also warranted for errors committed at Step Five, as alleged by plaintiff. The record does not support an SVP Level 2. Based on the evaluation of Dr. Wahl, plaintiff is limited to SVP Level 1. Moreover, the VE's testimony indicated that plaintiff's environmental restrictions would rule out a position as a garment bagger, contrary to the

22 - OPINION AND ORDER

Commissioner's suggestion.  (Tr. 186-87.)  Additionally, as the VE indicated, no vocational testing of plaintiff was conducted, and the ALJ ignored the VE's testimony that plaintiff's current employment was being performed as "accommodated" and not "competitive." (Tr. 59, 61.)  However, in light of my conclusion that plaintiff meets Listing 12.05C, additional analysis of this issue is not warranted.

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).  The issue turns on the utility of further proceedings. Id. at 1179.  A remand for an award of benefits is appropriate where there is no useful purpose to be served by further proceedings or where the record is fully developed. Id.; accord Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  This rule recognizes the importance of expediting disability claims, especially where it is evident from the record that benefits should be awarded. Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).

Here, it is clear from the record that plaintiff must be found disabled at step three for meeting Listing 12.05C.  Additional proceedings are unnecessary to determine plaintiff's entitlement to benefits.  The record is fully developed, and further proceedings "would serve no useful purpose." Lester v. Chater, 81 F.3d 821,

834 (9th Cir. 1995)(if improperly rejected evidence demonstrates that claimant is disabled, remand for payment of benefits is proper).   Accordingly, I conclude that the proper remedy is a remand for the payment of benefits.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED, and this case is REMANDED for an immediate calculation and award of benefits.

IT IS SO ORDERED.

DATED this   **23** day of MARCH, 2011.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge